**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TIMOTHY WAYNE ARNETT,      )   NO. CV 10-6814-JAK(E)
                           )
          Plaintiff,   )
                           )   MEMORANDUM AND ORDER RE
   v.                    )
                           )   MOTION TO DISMISS
L. SHOJAIE, ("MLP"), et al.  )
                           )   FIRST AMENDED COMPLAINT
         Defendants.   )
_____)

**BACKGROUND**

On September 20, 2010 Plaintiff, then a federal prisoner at the United States Penitentiary at Lompoc, California ("USP Lompoc"), filed this civil rights action pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). In the original Complaint, Plaintiff contended that officials of the Federal Bureau of Prisons ("BOP") assertedly: (1) were deliberately indifferent to Plaintiff's medical needs; (2) failed to make reasonable accommodation for Plaintiff's alleged paruresis ("Shy Bladder Syndrome"); and (3) retaliated against Plaintiff for filing

administrative grievances and a habeas corpus action (Complaint, p. 7).  Plaintiff named as Defendants eleven officials at USP Lompoc and a Medical Licensed Practitioner at the United States Prison at Victorville.

On December 20, 2010, the Court issued an "Order Dismissing Complaint With Leave to Amend."  On January 18, 2011, Plaintiff filed a First Amended Complaint, naming as Defendants four USP Lompoc officials: Warden Sanders, Assistant Warden "Lathrope," Chief Medical Officer Giron, and Case Manager Leyvas, all sued in their individual capacities.  The First Amended Complaint contains two claims for violation of the Eighth Amendment.  In Claim I, Plaintiff alleges that Dr. Giron "failed to take necessary actions to assure that Plaintiff's Incident Report and related sanctions would be expunged and refused to prescribe a single cell for Plaintiff as well as prescribe an alternative form sample other urine [sic] when asked to give a random sample for detection of a controlled substance" (First Amended Complaint, p. 5).  In Claim II, Plaintiff alleges that Defendants Sanders, Lathrope and Leyvas, with knowledge of Plaintiff's medical condition, caused Plaintiff to be confined in a facility without single cells or private bathrooms (id.).

On July 22, 2011, Defendants Sanders, Lothrop (allegedly incorrectly sued as "Lathrope"),[1] Giron and Leyvas filed a motion to dismiss the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, accompanied by a supporting

---

[1]     The Court henceforth will use the spelling "Lothrop" to refer to this Defendant.

memorandum ("Defendants' Mem."). Defendants contend: (1) Plaintiff failed to exhaust available administrative remedies, as required by the Prison Litigation Reform Act of 1995 (Pub. L. No. 104-134, 110 Stat. 1321), 42 U.S.C. § 1997e(a) ("PLRA"); (2) the First Amended Complaint fails to allege a claim for relief; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff fails to seek appropriate relief. On August 11, 2011, Plaintiff filed a verified Opposition to the Motion to Dismiss. On October 13, 2011, Defendants filed a Reply.

**SUMMARY OF PLAINTIFF'S ALLEGATIONS**

In the First Amended Complaint, Plaintiff alleges:

Plaintiff suffers from a condition which hinders Plaintiff from urinating in public or around other individuals ("Declaration of Timothy Wayne Arnett in Support of Claims," attached to First Amended Complaint ["Plaintiff's Dec."], ¶ 2). Plaintiff attributes the onset of his condition to an incident at the Fresno County jail in December of 2003 (id., ¶ 4). During the last fourteen years of Plaintiff's confinement, Plaintiff has been asked many times to provide urine samples (id., ¶ 3). Plaintiff has struggled to comply under direct visual supervision (id.). Plaintiff has never tested positive for any illegal narcotic (id.).

On August 25, 2006, Plaintiff was transferred to the United States Prison at Victorville and placed in a cell with another inmate (id., ¶ 5). After Plaintiff reported trouble both urinating when his

cellmate was present and giving a random urine sample, Plaintiff saw a medical licensed practitioner, who ordered a lipid panel (id., ¶¶ 5-6).  The medical licensed practitioner did not advise Plaintiff that Plaintiff might be suffering from paruresis, refer Plaintiff to the psychology department, or take any further steps to address Plaintiff's medical problem (id., ¶ 6).

On February 9, 2009, while Plaintiff was an inmate at USP Lompoc, Officer Diaz called Plaintiff to the Lieutenant's office to provide a urine sample (id., ¶ 7).  After Plaintiff informed Diaz that Plaintiff did not have sufficient liquid in Plaintiff's bladder to urinate, Diaz locked Plaintiff in a dry holding room for approximately an hour (id.).  When Diaz returned, Plaintiff told Diaz that Plaintiff had a medical problem and requested more water, which Diaz refused (id.).  Plaintiff allegedly again tried unsuccessfully to provide a urine sample (id.).  Plaintiff suggested that Diaz search Plaintiff and then place Plaintiff in the dry holding cell under indirect visual supervision (id.).

Diaz reported Plaintiff's request to Lieutenant D. Grimes (id., ¶ 8).  Grimes came into the holding room and began yelling at Plaintiff, accusing Plaintiff of trying to create policy (id.).  When Plaintiff attempted to explain that BOP Program Statement 6060.80 permitted Grimes to place Plaintiff in a dry room to provide a sample under indirect visual supervision, Grimes "went into a rage" and began yelling at Plaintiff, saying Plaintiff should be locked up (id.).  Grimes locked Plaintiff in the dry room (id.).

///

4

A few minutes later, Grimes and Diaz returned (id., ¶ 9).  Grimes handcuffed Plaintiff and said he was taking Plaintiff to the "SHU" (Special Housing Unit) for refusing to provide a urine sample (id.). Grimes refused Plaintiff's request for more water and time, and placed Plaintiff in a small dry holding room in the SHU (id.).

Approximately twenty minutes later, Lieutenant J. Mitchell arrived (id., ¶ 10).  Plaintiff told Mitchell that Plaintiff assertedly had a medical problem which made it impossible at times for Plaintiff to urinate on demand under direct visual supervision (id.). Plaintiff asked Mitchell for more water and time to provide a sample in a dry room without someone staring at Plaintiff (id.).  Mitchell became very upset, refused Plaintiff's request, and said she was giving Plaintiff an Incident Report for refusing to provide a urine sample (id.).  Prior to the incident, Plaintiff had enjoyed all inmate privilege and had earned the right to a single-man cell with its own private toilet and sink (Plaintiff's Dec., ¶ 12).

On February 18, 2009, Disciplinary Hearing Officer J.L. Spaulding held a hearing on the Incident Report (id., ¶ 11; First Amended Complaint, Ex. B).  In a March 16, 2009 proceeding, Spaulding found Plaintiff guilty of refusing to provide a urine sample (Plaintiff's Dec., ¶ 11; First Amended Complaint, Ex. B).  Plaintiff received disciplinary sanctions including 41 days' lost good time, a 60-day SHU term, loss of telephone privileges for 90 days, loss of commissary privileges for 90 days, loss of visiting privileges for one year, and reduced work detail pay for one year (id., ¶ 13).  Plaintiff also was placed on the "hot list" for those found to have refused to provide a

urine sample (id.).  Plaintiff was required to give a urine sample
every month for two years (id., ¶ 17).

When "Psychology Doctor" Whitney Rooks came to Plaintiff's cell
in the SHU on her weekly rounds, Plaintiff said he needed to speak to
Rooks concerning Shy Bladder Syndrome (id., ¶ 14).  Rooks said she
would schedule a meeting with Plaintiff after his release from the SHU
(id.).

Plaintiff requested a doctor's appointment concerning his problem
urinating (id., ¶ 16).  Nearly two months later, on May 14, 2009,
Defendant Giron called Plaintiff into Giron's office.  Giron recorded
that Plaintiff suffered from "parauresis" [sic] (id.).  Plaintiff told
Giron that Plaintiff was appealing the Incident Report to the Regional
Director (id., ¶ 17).  Giron assured Plaintiff that the Regional
Director would contact Giron, and that thereafter Giron would expunge
the Incident Report (id.).  However, Giron refused to contact the
Hearing Officer or the Regional Director (id.).  Giron issued
Plaintiff a medical slip stating: "May have extra 2 hours and extra
water when submitting urine samples due to medical reasons."  (id.;
First Amended Complaint, Ex. D).

On June 5, 2009, Plaintiff saw Defendant Rooks and expressed
concern that Plaintiff might be sent to the SHU again because prison
officials were not following Defendant Giron's medical order and
because Plaintiff was not being allowed to provide a urine sample in a
dry room under indirect supervision (id., ¶ 18).  Rooks said she would
provide the Captain's and Lieutenant's offices with a list of inmates

who suffered from Shy Bladder Syndrome which would include Plaintiff (id.).  However, Rooks never did so (id.).

On July 29, 2009, Plaintiff spoke to Defendant Giron concerning Giron's failure to cause the Incident Report to be expunged (id., ¶ 19).  Giron denied Plaintiff's request for a more specific medical report, stating that, when officials at the BOP Central Office read Giron's previous report, they would expunge the Incident Report (id.).  Giron refused Plaintiff's request that Giron call the Central Office (id.).

Throughout this period, Plaintiff suffered continuously from headaches, nightmares, sleeplessness, nervousness, anxiety, eating binges and severe emotional swings due to the manner in which Plaintiff was required to give random urine samples and Plaintiff's housing in a two-man cell with one toilet (id., ¶ 20).

On December 18, 2009, Plaintiff told Giron that the Central Office had denied Plaintiff's appeal, and asked whether the Central Office had ever called Giron (id., ¶ 21).  Giron said "no" (id.).  Giron wrote a new medical slip stating that Plaintiff had "Shy Bladder Syndrome" and required extra water and placement in a dry cell to provide a sample (id.).

A "BOP security management variable" placed on Plaintiff to keep him at USP Lompoc was scheduled to expire in February 2010 (id., ¶ 22).  Plaintiff's Case Manager, Defendant Leyvas, warned Plaintiff that Plaintiff thereafter would be transferred to a lower security

prison (id.).  Plaintiff wanted to stay at USP Lompoc to be close to Plaintiff's son and to retain his single-cell housing (id.).  In January of 2010, at Plaintiff's request, Leyvas applied to the BOP's Custody Designation Center requesting that Plaintiff be retained at USP Lompoc for one more year (id.).  The application was granted, and a management variable was placed on Plaintiff to keep him at USP Lompoc at least until March of 2011 (id.).

On January 25, 2010, Plaintiff filed a habeas corpus petition in this Court challenging the Incident Report (Plaintiff's Dec., ¶ 23).  See Arnett v. Sanders, CV 10-498-DDP (E).  That day, Plaintiff's son unexpectedly passed away (id., ¶ 24).  Plaintiff had been unable to receive visits from his son due to the Incident Report (id.).

On March 24, 2010, after pressure from the Office of the United States Attorney, Disciplinary Hearing Officer J.L. Spaulding expunged the Incident Report, but only after Plaintiff had served all of the sanctions except the "last year's worth of monthly urine samples" (id., ¶ 25).  Plaintiff regained his single cell (id., p. 26).  However, Defendant Leyvas told Plaintiff that Leyvas had contacted the Designation Center and had caused Plaintiff's management variable to be removed, and that Plaintiff would be transferred to another institution (id.).  Leyvas said she had done this because Plaintiff had filed the habeas corpus action (id.).  Leyvas said Plaintiff would be transferred to the Federal Correctional Institution at Terminal Island ("Terminal Island"), and would lose his single cell with its private bathroom because Terminal Island did not have single cells or private bathrooms (id.).

Plaintiff asked Defendant Giron to prescribe a single cell because of Plaintiff's medical disability (id.). Giron said he could not do so because Defendants Lothrop and Sanders had told Giron not to do so (id.). Plaintiff presently is incarcerated at Terminal Island in a dorm with numerous other inmates, and assertedly is forced to share a public and common bathroom (id., ¶ 27).

Plaintiff seeks an order: (1) requiring Plaintiff to be provided with a single cell with a private bathroom for the remainder of Plaintiff's prison term; (2) returning Plaintiff to USP Lompoc for the remainder of his sentence; and (3) requiring prison officials to provide Plaintiff an alternative form of sample testing when requesting samples for the detection of controlled substances (First Amended Complaint, p. 6). Plaintiff also seeks nominal and punitive damages.

**DISCUSSION**

**I.  Exhaustion**

**A.  Governing Legal Standards**

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing an action in federal court challenging prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 (2001); McKinney v. Carey, 311 F.3d 1198, 1199-2000 (9th Cir. 2002). "Proper exhaustion" is required, which means that the inmate must use "all steps that the agency holds out," and must comply "with

1  the system's critical rules." Woodford v. Ngo, 548 U.S. 81, 90, 93-95

2  (2006) (citation and internal quotations omitted).  A plaintiff must

3  complete the exhaustion process prior to filing a civil rights action.

4  McKinney v. Carey, 311 F.3d at 1199-2000.  Thus, Plaintiff was

5  required to complete the exhaustion process prior to September 14,

6  2010, the date Plaintiff submitted his request to proceed without

7  prepayment of the filing fee.  See Vaden v. Summerhill, 449 F.3d 1047,

8  1050 (9th Cir. 2006).

9

10     Exhaustion is an affirmative defense as to which the defendant

11 bears the burden of proof.  Jones v. Bock, 549 U.S. 199, 216 (2007);

12 Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 540

13 U.S. 810 (2003).  The defense of failure to exhaust administrative

14 remedies should be treated as a matter in abatement, "subject to an

15 unenumerated Rule 12(b)(6) motion . . . ."  Wyatt v. Terhune, 135 F.3d

16 at 1119 (citation omitted).  Thus, in deciding a motion to dismiss for

17 failure to exhaust, the Court "may look beyond the pleadings and

18 decide disputed issues of fact."  Id. at 1119-20.

19

20     In Nunez v. Duncan, 591 F.3d 1217 (9th Cir. 2010), the Ninth

21 Circuit described the BOP's administrative remedy procedure as

22 follows:

23

24        The BOP grievance process is set forth at 28 C.F.R. §

25        542.13-.15.  As a first step in this process, an inmate

26        normally must present his complaint informally to prison

27        staff using a BP-8 form.  If the informal complaint does not

28        resolve the dispute, the inmate may make an "Administrative

Remedy Request" concerning the dispute to the prison Warden
using a BP-9 form [also called a BP-229].[2]  The BP-8 and
BP-9 are linked.  Both forms involve a complaint arising out
of the same incident, and both forms must be submitted
within 20 calendar days of the date of that incident.  28
C.F.R. § 542.14(a).  An extension of time is available upon
a showing of valid reason for delay.  Section 542.14(b)
provides a non-exhaustive list of reasons that justify an
extension of time.  Valid reasons "include ... an extended
period in-transit during which the inmate was separated from
documents needed to prepare the Request or Appeal."  Id.

If the Warden renders an adverse decision on the BP-9,
the inmate may appeal to the Regional Director using a BP-10
form [also called a BP-230].  28 C.F.R. § 542.15(a).  The
BP-10 must be submitted to the Regional Director within 20
calendar days of the date of the Warden's decision.  Id.  As
with the time period for filing a BP-9, an extension of time
is available upon a showing of a valid reason.  Id.  Section
542.15(a) provides that "[v]alid reasons for delay include
those situations described in § 542.14(b)."  Id.

The inmate may appeal an adverse decision by the
Regional Director to the Central Office (also called the

_____

[2]      If a complaint is "sensitive," such that "the inmate's
safety or well-being would be placed in danger if the Request
became known at the institution," the inmate may bypass the
Warden and file a BP-9 directly with the BOP Regional Director.
28 C.F.R. § 542.14(d).

1 General Counsel) of the BOP using a BP-11 form [also called

2 a BP-231].  Id.  The BP-11 must be submitted to the Central

3 Office within 30 calendar days from the date of the Regional

4 Director's decision.  Id.  As with the time period for

5 filing a BP-9 and a BP-10, an extension is available upon

6 the showing of a valid reason as described in § 542.14(b).

7 Id.

8

9 Nunez v. Duncan, 591 F.3d at 1219-20 (footnote renumbered).

10

11 To exhaust, a prisoner must appeal through all appropriate levels

12 to the last level of review.  See Nunez v. Duncan, 591 F.3d at 1228

13 (prisoner failed to exhaust where he did not complete BOP's

14 administrative remedy process); Nigro v. Sullivan, 40 F.3d 990, 993

15 (9th Cir. 1994) (prisoner's failure timely to file appeal at the

16 highest level of review constituted a procedural default of his

17 claim); Kentz v. Sanders, 2009 WL 1351507 (C.D. Cal. May 12, 2009)

18 ("To exhaust the remedies provided in 28 C.F.R. § 542.10 et seq., an

19 inmate must complete all four levels of review.") (citation omitted);

20 see also Pilarte-Harrigan v. Owens, 2011 WL 251469, at *4 (D.S.C.

21 Jan. 26, 2011), aff'd, ___ F.3d ___, 2011 WL 2144415 (4th Cir. June 1,

22 2011) ("If the inmate's appeal [to the Regional Director] is denied,

23 the third and final step requires the prisoner to appeal to the

24 Administrator of the National Inmate Appeals for the Office of General

25 Counsel. . . . Completion of these three tiers fully exhausts an

26 inmate's administrative remedies and allows the inmate to seek

27 judicial review of his challenge.").

28 ///

However, appeals of disciplinary convictions are not subject to the informal resolution or first level appeal procedures; rather, a prisoner must submit a disciplinary appeal initially to the Regional Director for the region where the inmate currently is located.  See 28 C.F.R. § 542.14(d)(2).

## B.  Discussion

Defendants contend that Plaintiff has failed to exhaust his claim against Defendant Giron because Plaintiff assertedly did not file any administrative remedy requests alleging that Dr. Giron failed to assist in expunging the incident report, failed to prescribe a single cell, or refused to provide an alternative form of urinalysis [sic] (Defendant's Mem., p. 10).  Defendants also contend that Plaintiff has not filed any administrative remedy requests regarding any actions of Defendants Sanders, Lothrop and Leyvas which allegedly affected Plaintiff's placement in a single cell with a private bathroom (id.). Defendants rely on, inter alia, the Declaration of Sarah Schuh, an Attorney-Advisor for the BOP Los Angeles Consolidated Legal Center ("Schuh Dec."), and an attached report obtained from the BOP's "SENTRY" database concerning Plaintiff's appeal history (Schuh Dec., Ex. C).

Plaintiff contends that he satisfied the exhaustion requirement by allegedly: (1) pursuing an appeal of his disciplinary conviction; (2) filing an appeal in June of 2010 to which Plaintiff assertedly received no response; and (3) submitting a Federal Tort Claim.
///

1          **1.  <u>The Disciplinary Appeal</u>**

2

3          The record shows that, on April 23, 2009, Plaintiff appealed his

4     disciplinary conviction for refusing to provide a urine sample (First

5     Amended Complaint, Exs. K-5 – K-6).[3]  The appeal was submitted to the

6     BOP Regional Director in conformity with 28 C.F.R. section

7     542.14(d)(2).  The Regional Director denied the appeal on June 30,

8     2009 (First Amended Complaint, Exs. K-3 – K-4).  On July 28, 2009,

9     Plaintiff appealed to the National Inmate Appeals Office, which denied

10    the appeal on December 3, 2009 (First Amended Complaint, Exs. K-1 – K-

11    2).

12

13         Plaintiff' argument that the disciplinary appeal sufficed to

14    satisfy the PLRA's exhaustion requirement is flawed for several

15    reasons.  First, the use of a disciplinary appeal to exhaust

16    Plaintiff's present claims did not constitute the requisite "proper

17    exhaustion."  As indicated above, the procedure for a disciplinary

18    appeal differs from the procedure for a non-disciplinary appeal, in

19    that a disciplinary appeal involves only two levels because it must be

20    submitted initially to the Regional Director.  <u>See</u> 28 C.F.R. §

21    542.14(d)(2).  Because Plaintiff's claims against Defendants in the

22    present action do not directly challenge the prison discipline

23    Plaintiff received, "proper exhaustion" of those claims required

24    Plaintiff to follow the four-step appeal process set forth above,

25    <u>i.e.</u>, by submitting a request for informal resolution, followed by an

26    _____

27         [3]    The documents attached to the Declaration of Sarah
      Schuh purporting to be copies of this appeal are incomplete.
28    However, Plaintiff attached complete copies to his First Amended
      Complaint.

initial appeal to the institution, a subsequent appeal to the Regional Director and a final appeal to the General Counsel.  See 28 C.F.R. §§ 542.14, 542.15.

Some courts have excused an inmate from satisfying the PLRA's exhaustion requirement where the inmate reasonably, albeit erroneously, believed that a disciplinary appeal was the only remedy available.  See, e.g., Giano v. Goord, 380 F.3d 670 (2d Cir. 2004); Johnson v. Testman, 380 F.3d 691 (2d Cir. 2004); Murray v. Palmer, 2010 WL 1235591, at *3 (N.D.N.Y. Mar. 31, 2010).[4]  Plaintiff does not assert that he mistakenly believed that filing a disciplinary appeal was the only available administrative remedy open to him.  Moreover, because BOP regulations make it clear that the appeal process for a disciplinary appeal is distinct from that for a non-disciplinary appeal, Plaintiff reasonably could not have understood the disciplinary appeal to constitute the only available avenue of exhaustion for Plaintiff's claims in the present action.  See Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007) (failure to exhaust was unexcused where inmate did not argue that BOP's administrative remedy system was so confusing that he reasonably believed that he had satisfied the exhaustion requirement by complaining informally to prison staff and filing tort claims).

---

[4]    The Ninth Circuit cited Giano v. Goord and Johnson v. Testman with approval in Brown v. Valoff, 422 F.3d 926, 437 (9th Cir. 2005).  However, more recent lower court cases have questioned whether the excuse for exhaustion adopted in Giano v. Goord and Johnson v. Testman remains viable after Woodford v. Ngo.  See Flakes v. Gordon, 2011 WL 1194681, at *1 (W.D. Mich. Mar. 29, 2011); Murray v. Palmer, 2010 WL 1235591, at *3 n.7; see Macias v. Zenk, 495 F.3d 37, 43 n.1 (2d Cir. 2007) (declining to reach issue).

Additionally, and in any event, the contents of Plaintiff's disciplinary appeal did not satisfy the PLRA's exhaustion requirement with respect to the claims at issue in the present action. "A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010). "To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations." Id. Here, the applicable regulation requires only that an inmate "state the complaint" in the space provided on the BP-9 form. See 28 C.F.R. § 542.14(c)(3). In such circumstance, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Sapp v. Kimbrell, 623 F.3d at 824 (citation and internal quotations omitted); see also Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). "A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved." Griffin v. Arpaio, 557 F.3d at 1120. "A grievance also need not contain every fact necessary to prove each element of an eventual legal claim." Id. "The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Id. (citations omitted). The grievance also need not identify potential defendants by name if, as here, applicable regulations do not require such identification. See Jones v. Bock, 549 U.S. at 217-18 ("nothing in the [PLRA] imposes a 'name all defendants' requirement," and state law did not require such identification).

In his appeal to the Regional Director, Plaintiff challenged his

disciplinary conviction for refusing to give a urine sample,
complaining that Lieutenants Diaz and Grimes refused to follow alleged
BOP policy regarding the provision of a urine sample (see First
Amended Complaint, Exs. K-5 - K-6). Plaintiff contended that the
"Chain of Custody Specimen Form" assertedly was incorrect, and that
Plaintiff's medical history allegedly showed he had problems urinating
(id.). Plaintiff requested expungement of the Incident Report (id.).

In this disciplinary appeal, Plaintiff did not complain that Dr.
Giron or anyone else had promised to assist Plaintiff in securing
expungement of the Incident Report and then allegedly failed to keep
that purported promise. Plaintiff did not complain about any alleged
refusal by any prison official to house Plaintiff in a single cell,
did not complain about any alleged prison transfer, and did not
contend that Defendant Giron or any prison official failed to
implement an alternative form of testing for Plaintiff. Hence,
Plaintiff's disciplinary appeal to the Regional Director did not alert
prison officials to the nature of the wrongdoing alleged in the First
Amended Complaint. See McCollum v. Calif. Dep't of Corrections and
Rehabilitation, 647 F.3d 870, 876 (9th Cir. 2011) (grievances alleging
inadequate access to religious materials and worship spaces did not
suffice to exhaust challenge to prison's failure to secure a paid
chaplain); Griffin v. Arpaio, 557 F.3d at 1121 (appeal demanding
better means of access to top bunk did not suffice to exhaust claim
that prison officials disregarded plaintiff's lower bunk assignment);
O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1062 (9th Cir.
2007) (inmate's grievance requesting a lower bunk due to poor balance
attributable to previous brain injury did not suffice to exhaust claim

that prison officials denied plaintiff mental health treatment).

In his final-level appeal to the National Inmate Appeals Office, Plaintiff stated that he was dissatisfied with the Regional Director's response, contending that a physician's assistant assertedly had given Lieutenant Grimes false information that Plaintiff had no history of urination problems (First Amended Complaint, Ex. K-2). Plaintiff alleged that, had Grimes known the allegedly true facts, Grimes would have given Plaintiff more time, water and placement in a dry room to provide the sample (id.). Plaintiff purportedly attached "medical findings" of Dr. Giron, and added: "Dr. Giron is willing to further clarify my medical history of having trouble urinating if you will contact him" (id.). The statements concerning Dr. Giron did not put Dr. Giron, or anyone else, on notice of Plaintiff's claim that Dr. Giron supposedly refused to assist Plaintiff in expunging the Incident Report, or Plaintiff's claims that any Defendant purportedly denied Plaintiff a single cell, failed to obtain a single cell placement for Plaintiff, or refused to implement an alternative form of testing for Plaintiff.[5]

In sum, Plaintiff's disciplinary appeal did not constitute

---

[5]     In any event, BOP regulations prohibit an inmate from raising in an appeal issues not raised in a lower level appeal. See 28 C.F.R. § 542.15(b)(2). Plaintiff did not mention Dr. Giron or the circumstances concerning Dr. Giron in his lower-level appeal to the Regional Counsel. See Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009) (federal inmate did not exhaust claim which he asserted for the first time in third-level appeal to the Regional Director; "the BOP regulations precluded Johnson from amending his grievance during the administrative review process").

"proper exhaustion" of any of Plaintiff's claims.

### 2.   The Alleged June 2010 Appeal

Plaintiff contends that he submitted a request for informal resolution on June 21, 2010 (Opposition, p. 3, Ex. A2).  The alleged request purportedly described Plaintiff's "Shy Bladder Syndrome" and asked Defendant Sanders or Defendant Lothrop to permit Defendant Giron to prescribe Plaintiff a single cell and to refrain from transferring Plaintiff (Opposition, Ex. A2).  Plaintiff allegedly stated in the request that Defendant Giron had told Plaintiff that Giron would prescribe Plaintiff a single cell only if Sanders or Lothrop authorized such action, and that Giron did not want to prescribe a single cell "and then catch flak afterwards" (id.).  The appeal did not mention Dr. Giron's alleged refusal to assist Plaintiff in expunging the Incident Report.

A correctional counselor allegedly denied this purported informal request (id.).  The correctional counselor stated that the Bureau Electronic Medical Record and SENTRY database reportedly did not record that Plaintiff suffered from Shy Bladder Syndrome, and that Plaintiff's request for a single cell would be addressed at his new facility (id.).  Thereafter, Plaintiff allegedly submitted a first level request, or BP-9, dated June 21, 2010 (Opposition, Ex. A1).  In the purported first level response, Plaintiff alleged that he had been diagnosed as suffering from Shy Bladder Syndrome, that Dr. Giron assertedly should have prescribed a single cell and alternative form of drug testing, and that Defendant Leyvas would not place a medical

management variable on Plaintiff to keep him in a single cell (id.).

Plaintiff alleges that he thereafter was transferred to the Federal Correctional Institution at Terminal Island ("FCI Terminal Island" (Opposition, p. 4).  According to Plaintiff, Plaintiff subsequently contacted the administrative remedy clerks at USP Lompoc and FCI Terminal Island to request the status of the alleged first level appeal, and purportedly was told there was "no record of it" (Opposition, p. 4).  The Sentry database submitted by Defendants, which purportedly shows Plaintiff's appeal history, does not contain any entry for this alleged appeal (see Defendants' Ex. C, pp. 71-72).  Plaintiff contends that prison officials' failure to respond to the alleged appeal excuses Plaintiff from satisfying the PLRA's exhaustion requirement (Opposition, p. 4).

In some circumstances, prison officials' failure to respond to a grievance may demonstrate that no administrative remedy is available, and hence may excuse a failure to exhaust.  See Sapp v. Kimbrell, 623 F.3d at 822 (dictum; citing Dole v. Chandler, 438 F.3d 804, 811 (7th Cir. 2004)); Brown v. Valoff, 422 F.3d 926, 943 n.18 (9th Cir. 2005) (delay in response to grievance, particularly a time-sensitive grievance, may show unavailability of administrative remedy); see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it") (citations omitted); Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004), cert. denied, 544 U.S. 920 (2005) (administrative remedies deemed exhausted where prison

officials failed to respond to grievance).

In Dole v. Chandler, the Seventh Circuit held that a prisoner's failure to exhaust was excused where the prisoner followed the proper procedure to submit his grievance but prison officials purportedly never received the grievance. Doe v. Chandler, 438 F.3d at 811. The court observed that its holding might be different if prison officials had provided instructions on how to proceed if a grievance was lost which the prisoner had refused to follow. Id.

Defendants contend Plaintiff had a remedy for the allegedly lost grievance, citing BOP regulations specifying the response times for administrative appeals:

If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing. If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing.

1    Staff shall respond in writing to all filed Requests or

2    Appeals.  If the inmate does not receive a response within

3    the time allotted for reply, including extension, the inmate

4    may consider the absence of a response to be a denial at

5    that level.

6

7    28 C.F.R. § 542.18.  Defendants contend that, pursuant to the

8    underlined sentence in section 542.18, Plaintiff could have pursued an

9    appeal after allegedly failing to receive a response to his purported

10   first-level appeal (see Reply, pp. 6-8).

11

12   According to the BOP's Program Statement governing the

13   administrative remedy program, upon receipt of an appeal the

14   Administrative Remedy Clerk must stamp the appeal form with the date

15   received, log it into the SENTRY index as received on that date,

16   and write the "Remedy ID" as assigned by SENTRY on the appeal form.

17   See Program Statement 1330.16 (13)(a).[6]  All appeal submissions must

18   be entered into the SENTRY database regardless of whether they are

19   accepted or rejected.  Id.  When an appeal is entered into the SENTRY

20   database, a receipt is generated which must be returned to the inmate.

21   Id. at p. 3, § 5(a)(2).  When a response to the appeal is completed,

22   the Clerk must update SENTRY.  Program Statement 1330.16 (13)(e).

23

24

_____

25      [6]    The Court takes judicial notice of Federal Bureau of
Prisons Program Statement 1330.16, available on the BOP website
26   at www.bop.gov.  See United States v. Thornton, 511 F.3d 1221,
1229 n.5 (9th Cir. 2008) (taking judicial notice of BOP Program
27   Statement); Chaides v. Rios, 2010 WL 935610, at *4 n.2 (E.D. Cal.
Mar. 15, 2010) (same).
28

Thus, where an initial appeal is logged in, but subsequently lost or otherwise not made the subject of a response, the inmate is entitled to treat the appeal as denied after the time for a response has elapsed, and the inmate then may submit an appeal at the next level. In such circumstances, further exhaustion is not excused. See Douglas v. Johns, 2011 WL 2173627, at *2 (E.D.N.C. June 2, 2011) (Regional Director's failure to respond to grievance did not excuse exhaustion; under section 542.18 "plaintiff should have treated the lack of response as a denial of his request, and was obligated to appeal that denial to the next level of the administrative process in order to properly exhaust his remedies"); Buckley v. Pearsons, 2011 WL 3022539, at *2 (S.D. Miss. May 25, 2011), adopted, 2011 WL 3022531 (S.D. Miss. July 22, 2011) (federal inmate who did not receive response to informal resolution request, but who did not appeal to next level of review, did not exhaust); Crum v. Attorney General, 2007 WL 781935, at *6 (S.D.W.Va. Mar. 13, 2007), aff'd, 282 Fed. App'x 223 (4th Cir. 2008) ("The Regional Office's failure to provide a response to his administrative remedy appeal does not excuse an inmate from proceeding to the next step of the administrative remedy process . . . ."); see also Jernigan v. Stuchell, 304 F.3d 1030, 1032-33 (10th Cir. 2002), cert. denied, 538 U.S. 947 (2003) (exhaustion not excused where director of corrections informed prisoner how to proceed when prisoner did not receive response from warden, but prisoner did not follow that procedure).

Here, however, the record does not show that Plaintiff's purported appeal ever was logged into the Administrative Remedy Index or otherwise filed, or that Plaintiff ever received notice of the

1   filing or the receipt of the purported appeal.  Therefore, the

2   timeline for a response set forth in section 542.18 was never

3   triggered.  Defendants identify no BOP regulation or policy which

4   instructs an inmate what to do when an appeal, though submitted, was

5   never logged or filed.

6

7       A similar situation arose in Hicks v. Irvin, 2010 WL 2723047

8   (N.D. Ill. July 8, 2010).  In that case, the plaintiff filed a

9   declaration stating that although he had submitted grievances, the

10  BOP's database had no record of the purported grievances.  The court

11  ruled that, because the alleged grievances were never logged in, under

12  section 542.18 the plaintiff had no way of knowing when he could file

13  a subsequent higher level appeal, and hence exhaustion was excused.

14  Hicks v. Irvin, 2010 WL 2723047, at *6-8.

15

16      Here too, Plaintiff's purported June 2010 appeal appears never to

17  have been entered into the SENTRY database.  Nothing in the record

18  suggests that Plaintiff ever received a receipt for the purported

19  appeal, or that Plaintiff otherwise had the ability to pursue the

20  assertedly lost appeal.

21

22      Prison officials' alleged failure to respond to the June 2010

23  appeal can only excuse further exhaustion with respect to claims

24  raised in that appeal, however.  See Sapp v. Kimbrell, 623 F.3d at 828

25  ("We hold that administrative remedies are 'effectively unavailable' –

26  and that the PLRA's exhaustion requirement is therefore excused –

27  where prison officials improperly screen a prisoner's grievance or

28  grievances that would have sufficed to exhaust the claim that the

prisoner seeks to pursue in federal court.") (emphasis added); see generally Jones v. Bock, 549 U.S. at 221-24 (exhaustion is considered on a claim-by-claim basis).

Had the exhaustion process been completed with respect to the June 2010 appeal, that appeal would have sufficed to exhaust Plaintiff's claims that Defendant Giron allegedly failed to prescribe a single cell, that Defendants Sanders and Lothrop assertedly refused to house Plaintiff in a single cell, and that Defendant Leyvas allegedly removed a management variable which had permitted Plaintiff to have a single cell. Defendants have not met their burden to show that these claims are unexhausted. However, the alleged June 2010 appeal did not contain any allegations concerning the alleged failure of Dr. Giron, or any prison official, to assist Plaintiff in expunging the Incident Report. Therefore, Plaintiff is not excused from exhausting this claim against Dr. Giron.

### 3. The Alleged Federal Tort Claim

Plaintiff's contention that his purported federal tort claim satisfied the PLRA's exhaustion requirement (see Opposition, p. 4 & Ex. B) plainly lacks merit. See Panaro v. City of North Las Vegas, 432 F.3d 949, 953-54 (9th Cir. 2005) (inmate's participation in an internal affairs investigation against one of the officers who allegedly beat inmate did not suffice to exhaust excessive force claim); O'Guinn v. Lovelock Correctional Center, 502 F.3d at 1062-63 (inmate's complaint filed with Department of Justice did not satisfy PLRA's exhaustion requirement); see also Macias v. Zenk, 495 F.3d at

44 (prisoner "cannot satisfy the PLRA's exhaustion requirement solely by filing . . . administrative tort claims"); Watson-El v. Wilson, 2010 WL 3732127, at *9 n.1 (N.D. Ill. Sept. 15, 2010) ("Fulfillment of the Federal Tort Claims Act's administrative exhaustion requirement does not satisfy the PLRA's exhaustion requirement.") (citations omitted); Dorsey v. Rubiola, 2009 WL 4928061, at *6 n.10 (S.D. Miss. Dec. 18, 2009 ("the exhaustion requirements under the PLRA and the Federal Tort Claims Act are separate and distinct, and the satisfaction of one does not constitute satisfaction[] of the other") (citations omitted).

## C.  Conclusion

    Plaintiff's claim that Defendant Giron failed to assist Plaintiff in expunging the Incident Report is not exhausted, and therefore must be dismissed without leave to amend but without prejudice.  Defendants have not met their burden to show that Plaintiff has failed to satisfy the PLRA's exhaustion requirement with respect to Plaintiff's other claims.

## II.  Sufficiency of Plaintiff's Exhausted Claims

    Prison officials can violate a prisoner's Eighth Amendment right to be free of cruel and unusual punishment if they are deliberately indifferent to the prisoner's serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d

1133, 1136 (9th Cir. 1997).  "A 'serious' medical need exists if the
failure to treat a prisoner's condition could result in further
significant injury or the 'unnecessary and wanton infliction of
pain.'"  <u>McGuckin v. Smith</u>, 974 F.2d at 1059 (citation omitted); <u>see</u>
<u>also</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc)
(examples of "serious medical needs" include "a medical condition that
significantly affects an individual's daily activities," and "the
existence of chronic and substantial pain"; citation and internal
quotations omitted).

    To show deliberate indifference, a plaintiff must show that
prison officials knew of and disregarded an excessive risk to inmate
health or safety.  <u>Farmer v. Brennan</u>, 511 U.S. at 837.  The official
must have been aware of facts from which the inference could be drawn
that a substantial risk of serious harm existed, and must have also
drawn the inference.  <u>Id.</u>  Thus, inadequate treatment due to accident,
mistake, inadvertence, or even gross negligence does not amount to a
constitutional violation.  <u>Estelle v. Gamble</u>, 429 U.S. at 105-06;
<u>McGuckin v. Smith</u>, 974 F.2d at 1060; <u>Wood v. Housewright</u>, 900 F.2d
1332, 1334 (9th Cir. 1990).

    Plaintiff's allegations that Dr. Giron assertedly refused to
prescribe Plaintiff single-cell housing for Plaintiff's purported shy
bladder syndrome and to order a different form of drug screening fail
to plead the requisite deliberate indifference.  Plaintiff does not
allege facts showing that Dr. Giron knew of, and deliberately
disregarded, any serious risk of harm to Plaintiff if Plaintiff were
not housed in a single cell.  <u>See</u> <u>Brammer v. Northrup</u>, 2010 WL 681296,

at *3 (W.D.N.Y. Feb. 24, 2010) (inmate's shy bladder syndrome did not entail an excessive risk to health or safety); Mulligan v. Kenney, 2010 WL 101535, at *3 (W.D. Wash. Jan. 7, 2010) (same).  The alleged refusal to prescribe a different form of drug testing does not show any deliberate indifference to any serious medical need of Plaintiff. Indeed, Plaintiff does not allege that Dr. Giron refused to treat Plaintiff; to the contrary, Plaintiff alleges that Dr. Giron issued medical slips permitting Plaintiff to have extra water and time to give a urine sample.  See Chapman v. Raemisch, 2009 WL 425813, at *6 (E.D. Wisc. Feb. 20, 2009) (although parties did not dispute that inmate's paruresis was a serious medical condition, prison officials did not violate constitution by offering inmate a modified urine testing procedure).  At most, Plaintiff alleges only a disagreement between Plaintiff and his doctor concerning treatment, which does not suffice to show a constitutional violation.  See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (doctor's substitution of allegedly less efficacious medication not unconstitutional); Franklin v. State of Oregon, State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities does not give rise to a § 1983 claim.").

Similarly, Plaintiff has failed to plead the deliberate indifference of Defendants Sanders and Lothrop.  Plaintiff alleges only that these Defendants refused to permit Defendant Giron to prescribe a single cell for Plaintiff.  Plaintiff alleges no facts showing that Defendants Sanders and Lothrop knew of, and subjectively disregarded, a serious risk of harm to Plaintiff if Plaintiff did not obtain a single cell.  Plaintiff's claim that Defendant Leyvas

1  exhibited deliberate indifference to Plaintiff's serious medical

2  needs, assertedly by removing a management variable so as to allow

3  Plaintiff to be transferred to another institution which did not have

4  single cell bathrooms, fails for similar reasons.  Plaintiff has not

5  alleged facts showing that Leyvas acted with knowledge and subjective

6  disregard of any serious risk of harm to Plaintiff.

7

8  **III.   Claim for Injunctive Relief**

9

10      To the extent Plaintiff asserts a claim for injunctive relief

11  against Defendant Lompoc officials, Plaintiff's alleged transfer to

12  Terminal Island moots any such claims.  See Dilley v. Gunn, 64 F.3d

13  1365, 1368-69 (9th Cir. 1995).

14

15                        **ORDER**

16

17      Plaintiff's claim that Defendant Giron failed to assist Plaintiff

18  in expunging the Incident Report is dismissed without leave to amend

19  but without prejudice.  The First Amended Complaint otherwise is

20  dismissed with leave to amend.  If Plaintiff still wishes to pursue

21  this action, he is granted thirty (30) days from the date of this

22  Memorandum and Order within which to file a Second Amended Complaint.

23  The Second Amended Complaint shall be complete in itself.  It shall

24  not refer in any manner to any prior complaint.  Plaintiff shall not

25  attempt to add additional parties without leave of Court.  See Fed. R.

26  Civ. P. 21.  Failure to file timely a Second Amended Complaint in

27  conformity with this Memorandum and Order may result in the dismissal

28  of this action.  See Simon v. Value Behavioral Health, Inc., 208 F.3d

1073, 1084 (9th Cir.), amended, 234 F.3d 428 (9th Cir. 2000), cert. denied, 531 U.S. 1104 (2001), overruled on other grounds, Odom v. Microsoft Corp., 486 F.3d 541 (9th Cir.), cert. denied, 128 S. Ct. 464 (2007) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and where court had given plaintiff notice of the substantive problems with his claims); Plumeau v. School District #40, County of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).[7]

DATED: November 8, 2011.

_____
JOHN A. KRONSTADT
UNITED STATES DISTRICT JUDGE

PRESENTED this 1st day of
November, 2011, by

_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[7] In light of the Court's decision to grant leave to amend, the Court declines to rule on the issue of qualified immunity, an issue often better resolved on summary judgment. See Kwai Fun Wong v. United States, 373 F.3d 952, 957 (9th Cir. 2004).